IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

COTTON STATES MUTUAL
INSURANCE COMPANY,
        Plaintiff,

v.

GREGORY S. SAMPLE,
        Defendant.

CASE NO   1:07cv842 - WKW

\*

\*

\*

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff Cotton States Mutual Insurance Company and files

this Declaratory Judgment Action against Gregory S. Sample seeking a determination of

its rights and obligations pursuant to an insurance policy issued to Gregory S. Sample for

the following reasons and alleges as follows:

1.     Cotton States Mutual Insurance Company is a mutual insurance corporation

    organized and existing pursuant to the laws of the State of Georgia with its

    principle place of business in Atlanta, Georgia.

2.     Gregory S. Sample is an individual citizen of the State of Alabama who upon

    information and belief, resides at 507 Santolina Rd, or maintains an office at

    288 W. Main Street Suite 2, Dothan, Houston County, Alabama, 36301.

3.     This Court has jurisdiction over this act pursuant to 28 USCA §2201, The

    Federal Declaratory Judgment Act.

4.     This Court also has jurisdiction over this action pursuant to 28 USCA §1332

    (a)(1) as the Defendant is a citizen of Alabama and the Plaintiff is a corporate

entity and a citizen of Georgia and the amount in controversy exceeds $75,000.00 exclusive of interest and cost.

5.   Venue is proper in the United States District Court for the Middle District of Alabama, Southern Division pursuant to 28 USCA §1391 (a) and (b).

6.   This is an action for Declaratory Judgment for the purpose of determining an actual controversy between the parties as hereinafter more fully appears.

7.   The subject matter of this litigation involves a Home Insurance Policy written by Cotton States Mutual Insurance Company and obtained by Defendant Gregory S. Sample in connection with premises located 507 Santolina Rd, Dothan, Alabama.

8.   An actual controversy exists among the parties regarding the obligations, if any, of the Plaintiff pursuant to this insurance policy.  A copy of this insurance policy is attached hereto and incorporated herein as if fully stated as Exhibit "A".

9.   The subject policy period began November 2, 2006 as noted on the attached home insurance policy Declaration Page, attached hereto and incorporated herein as Exhibit "B".

10.  Defendant has made a claim pursuant to this homeowner's policy for defense and indemnity with regard to claims being made against Defendant by a former business partner or employer and his entity.

11.  The facts as relayed to Plaintiff are:  Martin McCall has brought suit along with his entity New World Closing Services, Inc. against Gregory S. Sample and his entity Regatta Closing and Title Corporation, Inc., in a case currently

pending in the Circuit Court of Houston County, Alabama, Case No. CV-2007-272-L. A copy of said Complaint is attached hereto as Exhibit C.

12.    McCall alleges he and Defendant Gregory S. Sample worked together for New World. McCall as owner/employer and Sample as employee. Sample is alleged to have been employed at New World during the term between graduation from law school and passing the bar exam with the agreement between them "that Sample, after passing the bar examination, would then perform all of the loan closing duties which had previously been outsourced to other attorney." Paragraph 10 of Complaint.

13.    McCall and Defendant Gregory S. Sample have a dispute regarding the failure of Sample to close. McCall further alleges that the parties thereafter entered into an agreement by which Sample was to purchase 75% of New World's stock for $450,000.00 said contract executed August 2, 2006. Paragraph 12 of Complaint. McCall further alleges in a later agreement he and Sample agreed to a payment plan and down payment arrangement. Paragraph 13 of Complaint.

14.    The lawsuit asserts Defendant Sample has allegedly wrongfully and maliciously or in bad faith converted to his own use, documents belonging to McCall breached the contract and subsequent arguments.

15.    The Complaint further asserts Defendant Sample has made malicious and defamatory verbal statements directed at McCall and/or New World and has attempted to interfere with New World clients and customers. The Circuit Court action further seeks specific performance of the purchase agreement.

The alleged assaults, threats and actions in a menacing manner at the business office of Sample have resulted in McCall suing for mental anguish and emotional distress allegedly caused by Sample's actions.

16.    The Complaint attached hereto contained six counts such that it asserts: (1) a breach of contract; (2) a specific performance claim; (3) a defamation claim; (4) a tortuous interference with business relations claim; (5) a conversion claim and a claim for invasion of privacy.  While Count II seeks equitable relief of specific performance, Counts I and II through VI seek non specific compensatory and punitive damages.

17.    Defendant Sample has made the demand upon Plaintiff Cotton States to provide defense and indemnity pursuant to his Home Insurance Policy for the complaint brought by McCall against him personally.  It is unclear whether Sample also seeks a defense and/or indemnity for his entity Regatta Closing and Title Corporation, Inc.  There is no evidence McCall sought any medical treatment for the mental anguish or emotional distress.

18.    The Home Insurance Policy issued by Plaintiff contains exclusions from coverage for the claims asserted by McCall in the pending state court action.

19.    The Home Insurance Policy excludes from coverage any exemplary or punitive damages as sought by McCall.

20.    The Home Insurance Policy excludes from coverage any suit or claim that does not involve bodily injury or property damage caused by an occurrence.

21.    The Home Insurance Policy further excludes from coverage incidences which are not defined as an "occurrence".

22. The Home Insurance Policy contains any exclusion from coverage, claims pursued as a result of contracts or agreements entered into by an insured such as the breach of contract claim.

23. The Home Insurance Policy contains an exclusion from coverage for intentional acts of the insured.

24. The Home Insurance Policy contains an exclusion from coverage for acts arising out of or in connection with a business engaged in by an insured.

25. The Home Insurance Policy contains an exclusion from coverage for acts arising out of a premises owned by insured, rented to an insured or rented to others by an insured that is not a specifically insured location.

26. The Home Insurance Policy contains an exclusion from coverage for bodily injury or property damages arising out of physical or mental abuse whether intentional or not.

27. The Home Insurance Policy contains an exclusion from coverage for bodily injury or property damage arising from an alleged criminal act.

28. The Home Insurance Policy contains as Exclusion from coverage for claims against a person or entity that is not a named insured.

29. Plaintiff Cotton States Mutual Insurance Company hereby requests a Declaratory Judgment such that the exclusions mentioned above and contained within the Home Insurance Policy attached hereto, provide no coverage for the claims of McCall against Defendant Sample.

30.    Further, Cotton States Mutual Insurance Company requests a declaration the Home Insurance Policy does not impose any duty on Cotton States in favor of the Defendant herein arising out of the lawsuit brought by McCall.

31.    Further, Cotton States Mutual Insurance Company seeks a declaration the Home Insurance Policy does not provide coverage for bodily injury or property damage arising out of the business dispute as asserted in the McCall lawsuit.

32.    Further, Cotton States Mutual Insurance Company seeks a declaration the Home Insurance Policy does not provide coverage for bodily injury or property damage arising out of the alleged invasion of privacy as asserted in the McCall lawsuit.

33.    Further, Cotton States Mutual Insurance Company seeks a declaration the Home Insurance Policy does not provide coverage for bodily injury or property damage arising out of the alleged mental anguish or emotional distress as asserted in the McCall lawsuit.

34.    Further, Cotton States Mutual Insurance Company seeks a declaration the Home Insurance Policy does not provide coverage for bodily injury or property damage at an uninsured location as asserted in the McCall lawsuit.

35.    Further, Cotton States Mutual Insurance Company seeks a declaration the Home Insurance Policy does not provide coverage for bodily injury or property damage arising out of intentional acts as asserted in the McCall lawsuit.

36.    Further, Cotton States Mutual Insurance Company seeks a declaration the Home Insurance Policy does not provide coverage for bodily injury or property damage arising out of contracts or agreements entered into by the insured as asserted in the McCall lawsuit.

37.    Additionally and/or in the alternative, should this Court find there is any coverage for the incidents asserted in the McCall complaint pursuant to the Home Insurance Policy, which Cotton States Mutual Insurance Company denied, the Home Insurance Policy contains an exclusion for punitive or exemplary damages and consequently there is no coverage for punitive or exemplary damages regardless. As well as finding there is no coverage for any order of specific performance as requested by McCall.

WHEREFORE, Cotton States Mutual Insurance Company prays as follows:

1.    This Court enter a judgment declaring the rights and obligations of each of the parties herein and with regard to the dispute;

2.    Enter a judgment declaring there is no coverage to Defendant Sample under the afore mentioned  insurance policy in connection with the McCall action;

3.    Enter a judgment declaring Cotton States Mutual Insurance Company has no obligation to defend Defendant Sample in connection with the McCall action;

4.    Enter a judgment declaring Cotton States Mutual Insurance Company has no obligation to indemnify Defendant Sample in connection with the McCall action;

5. Award Cotton States Mutual Insurance Company the cost of this action and ;

6. Grant Cotton States Mutual Insurance Company any and all further relief this Court may deem proper.

Respectfully submitted,

JANNEA S. ROGERS
(ROGEJ7403)
Adams and Reese, LLP
P. O. Box 1348
Mobile, Alabama  36633-1348
251.433.3234
251.438.7733 Facsimile
jannea.rogers@arlaw.com
Attorney for Cotton States Mutual
Insurance Company.

Please serve Defendant at the following address:

Gregory S. Sample
507 Santolina Road
Dothan, Alabama  36301

**HOME INSURANCE**
**POLICY DECLARATIONS**

Cotton States Mutual Insurance Company
P.O. Box 105303, Atlanta, Georgia 30348-5303

| POLICY NUMBER | POLICY TERM | PAYMENT PLAN | INS. OFFICE / AGENT |
|---|---|---|---|
| G01K7001161 | 12 MONTHS | ANNUAL | 01001 STHAL/ 17215 |

To report a claim any time day or night, call 1-800-457-1658.

ACCOUNT NUMBER 8152710-001-00002

INSURED

**SAMPLE GREGORY**
**507 SANTALINA RD**
**DOTHAN AL 36303**

Policy period beginning Nov 02, 2006
12:01 a.m. standard time at your address.

Declarations reason    **NEW POLICY ISSUE**

Effective  Nov 02, 2006  12:01 a.m. standard time at your address.

Your policy consists of the policy booklet, applications, declarations pages and any endorsements.  Please keep them together.

You have only the coverages and amounts of insurance as stated in this declarations, subject to all provisions of your policy.

| PREMIUM AMOUNT | $482.57 | TOTAL PREMIUM | $482.57 | | B W |
|---|---|---|---|---|---|

| LOCATION OF PROPERTY COVERED | |
|---|---|
| LCTN | STREET ADDRESS/LOT & BLOCK/PHYSICAL DESCRIPTION/QTR, SECTION, TOWNSHIP, RANGE, COUNTY AND STATE |

001    507 SANTALINA RD DOTHAN AL

**$1,000 DEDUCTIBLE PER LOCATION FOR EACH OCCURRENCE APPLICABLE TO SECTIONS 2, 3, 5 AND 6 CC-FF**

**DESCRIPTION OF PROPERTY COVERED**

| ITEM | LCTN | DESCRIPTION OF COVERAGE | SEC/COV | PERIL (Refer to policy booklet) | LOSS STLMT | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|---|---|---|---|
| 001-01 | | LIABILITY | 1 | A | | 100,000 | 36.00 |
| | | MEDICAL PAYMENTS | 1 | B | | | |
| | | EACH PERSON | | | | 1,000 | INCL |
| | | EACH OCCURRENCE | | | | 5,000 | INCL |
| 100-10 | 001 | DWELLING (A) HOMEOWNERS | 2 | C | 1 | 1 | 110,000 | 396.57 |
| 20 | 001 | PERSONAL PROPERTY | 2 | D | 2-19 | 3 | 82,500 | INCL |
| 30 | 001 | ADDITIONAL LIVING EXPENSE | 2 | E | 1 | | 22,000 | INCL |
| 40 | 001 | AUXILIARY PRIVATE STRUCTURES | 2 | F | 1 | 1 | 11,000 | INCL |
| | | INFLATION | 6 | CC | | | | INCL |
| | | PERSONAL PROPERTY REPLACEMENT COST | 6 | DD | | | | INCL |
| | | ENDORSEMENTS | | | | | | |
| | | END. 047 SUMP PUMP/BACK-UP OF SEWER/DRAIN | | | | | 110,000 | 50.00 |
| | | ($10,000 PERSONAL PROPERTY) | | | | | | |
| | | DISCOUNTS | | | | | | |
| | | ALARM CREDIT - 5% | | | | | | INCL |
| | | SAFE HEAT | | | | | | INCL |
| 999-80 | | PACKAGE OF SPECIAL COVERAGES | 5 | K | | | | INCL |
| | | POLICY DISCOUNTS | | | | | | |
| | | MULTI-POLICY DISCOUNT | | | | | | INCL |
| | | POLICY ENDORSEMENTS | | | | | | |
| | | ALABAMA AMENDATORY | | | | | | |

EXHIBIT

A

HOME INSURANCE
POLICY DECLARATIONS

Cotton States Mutual Insurance Company◆
P.O. Box 105303, Atlanta, Georgia 30348-5303

| POLICY NUMBER | POLICY TERM | PAYMENT PLAN | INS. OFFICE / AGENT |
|---|---|---|---|
| G01K7001161 | 12 MONTHS | ANNUAL | 01001 STHAL/ 17215 |

| ADDITIONAL INTEREST CONDITIONS | |
|---|---|
| NAME AND ADDRESS | NAME AND ADDRESS |

MORTGAGEE BILLED

FLAGSTAR BANK FSB
ITS SUCC AND/OR ASSIGNS ATIMA
PO BOX 7026
TROY  MI  48007-7026

LOAN NUMBER
LIMITED TO

501257300

12/26/2006

DATE COUNTERSIGN

FOR SERVICE CALL YOUR AGENT ROB SALISBURY AT (334)794-4295.
FILE COPY

21303C (00-09/06)

JUN.27.2007 10:25AM COTTON STATES INS. N NO.709 P.6/35
Case 1:07-cv-00842-WKW-TFM Document 1-2 Filed 09/17/2007 Page 3 of 4

END. 047-03

## SUMP PUMP FAILURE/BACK-UP OF SEWER OR DRAIN

### THIS ENDORSEMENT INCLUDES LIMITATIONS AND RESTRICTIONS

For additional premium, "we" cover direct physical loss to covered property resulting from "sump pump failure". This coverage applies only to property covered in the following Coverages in effect at the time of loss:

**Dwelling, Coverage C**
**Personal Property, Coverage D**

### ADDITIONAL DEFINITION APPLICABLE TO THIS ENDORSEMENT

"Sump pump failure" means water or water-borne material, including sewage, which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment.

### ADDITIONAL EXCLUSIONS APPLICABLE TO THIS ENDORSEMENT

"We" will not pay for loss resulting directly or indirectly from any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. Flood, surface water (including water flowing naturally on or near the surface and water whose flow is artificially altered) waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; or

2. Water or water-borne material, regardless of its source, below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure. Direct loss by fire, explosion, or theft resulting from water damage is covered.

### ADDITIONAL CONDITIONS APPLICABLE TO THIS ENDORSEMENT

1. "We" will not pay more than the limit of liability stated for this endorsement in the Declarations.

2. For **Personal Property, Coverage D** "we" will pay no more than the limit of liability shown in the Declarations for SUMP PUMP FAILURE/BACKUP OF SEWER OR DRAIN or $10,000, whichever is less.

3. A $500 deductible will apply to each "occurrence" unless the policy deductible stated in the Declarations is higher, in which case the higher deductible will apply.

4. "We" will not pay for loss occurring within the first 10 days after inception of this endorsement. However, this limitation does not apply when this endorsement is part of the policy when issued as new business, or when added to replace another SUMP PUMP FAILURE/BACKUP OF SEWER OR DRAIN endorsement.

Nothing contained here varies, alters, or extends any provision of this policy except as provided in this endorsement.

20047 (03-07/03)

END. 044AL-00

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ALABAMA AMENDATORY ENDORSEMENT

### THIS ENDORSEMENT INCLUDES LIMITATIONS AND RESTRICTIONS

**This endorsement changes the following sections of your policy:**

**SECTION 1**

**Exclusions - Section 1**

The following is added to the end of Item F.8.:

However, this exclusion does not apply to punitive or exemplary damages awarded for wrongful death.

**Conditions - Section 1 (Includes Limitations)**

Item I. **Concealment Or Fraud** is deleted and replaced by the following:

  **I.  Concealment Or Fraud.**

    "We" do not provide coverage where any "insured", whether before or after a loss, has:

      **1.**  Intentionally concealed or misrepresented any material fact or circumstance;

      **2.**  Engaged in fraudulent conduct; or

      **3.**  Made false statements

    relating to this insurance.

**EXCLUSIONS - SECTIONS 2 through 6**

Item A.8. **Intentional Loss** is deleted and replaced by the following:

  **8.  Intentional Loss**

    **a.**  Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

      In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

    **b.**  However, this exclusion will not apply to deny payment to an innocent co-"insured" who is a victim of domestic abuse as defined in the "Domestic Abuse Insurance Protection Act", when such coverage would otherwise be excluded under this provision if the damage or loss was proximately related to and in furtherance of abuse and the innocent co-"insured":

      **(1)**  Either:

        **(a)**  Files a complaint under the "Protection from Abuse Act", against the abuser for the act causing the loss, or

        **(b)**  Seeks a warrant for the abuser's arrest for the act causing the loss; and

      **(2)**  Completes a sworn affidavit for the insurer that indicates:

        **(a)**  The cause of the loss;

        **(b)**  A pledge to cooperate in any criminal prosecution of the person committing the act causing the loss; and

        **(c)**  A pledge not to voluntarily dismiss any complaint the innocent co-"insured" has filed under the "Protection from Abuse Act."

    c. If payment is made pursuant to paragraph **8.b.**, payment to the innocent co-"insured" may be limited to such innocent co-"insureds" ownership interest in the property reduced by any payment to a mortgagee or other secured interest. However, "we" shall not be required to make any subsequent payment to any other "insured" for the part of any loss for which the innocent co-"insured" has received payment. In no event will "we" pay more than the limit of liability.

## GENERAL POLICY CONDITIONS (INCLUDES LIMITATIONS)

Item I. **Subrogation** is deleted and replaced by the following:

    I. **Subrogation**

    An "insured" may waive in writing before a loss all rights of recovery against any person. However, this waiver does not apply if an "insured" is an innocent victim of domestic abuse as defined in the "Domestic Abuse Insurance Protection Act". In this case, "we" shall be subrogated to the rights of the innocent "insured" claimant to recover for any losses "we" paid for property damages.

    In all other cases, if an "insured" has not waived in writing before a loss all rights of recovery against any person, "we" may require an assignment of rights of recovery for a loss to the extent that payment is made by "us". If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with "us".

    Subrogation does not apply to **C. Damage To Property Of Others** under **Additional Coverages - Section 1.**

Nothing contained here varies, alters, or extends any provision of this policy except as provided in this endorsement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

20044AL (00-09/06)      Page 2 of 2



PO Box 105303
Atlanta, GA 30348-5303
*tel (866) 714-6902*
*www.cottonstatesinsurance.com*

## Privacy Statement

*At Cotton States Insurance* and it's affiliates[1], *your privacy has always been important to us. We believe keeping your information confidential is a fundamental part of doing business. We ensure that your privacy is fully protected under the law and we never sell your information to anyone. Below is a summary of how we collect and use your information.*

### Confidentiality and Security
All information collected about you is treated confidentially. We restrict our employees' access to your information to only those who need to know information to provide products or services to you and for other reasons permitted by law. We maintain physical, electronic and procedural safeguards that comply with applicable law and regulations to guard your nonpublic personal information.

### Categories of Information We Collect
The information we collect from you by mail, in person, electronically, or by phone, is dependent upon the types of products and services you are requesting or currently own. We collect nonpublic personal information about you including information:

- **From You:** on applications or other forms, by phone and online, such as your name, address, social security number, assets and income;

- **About Your Transactions:** with us, our affiliates or others, such as the products and services you have purchased from us in the past and your transaction history with us; and

- **From Others:** including consumer reporting agencies and other third-parties; such as your creditworthiness, credit history, demographic data and other related data.

### Categories of Information We Disclose To Others
Under the law, we may disclose all of the information listed above. For instance we may disclose information:

- **To Authorized Personnel and Affiliates:** to provide you outstanding products and services from us and our affiliates;

- **To Servicing Third-parties:** that are necessary to affect, administer or enforce your transactions with us, or in connection with servicing your account;

- **To Others:** to credit bureaus, regulatory authorities, insurance support organizations and other third-parties as allowed by law; and

- **To Joint Marketing Companies:** to companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements.

Of course, personally identifiable medical information and information about personal trust accounts held at COUNTRY Trust Bank* are disclosed only as allowed by law or with your written authorization. We also reserve the right to disclose personally identifiable information about you to other non-affiliated third parties upon proper notice and with your consent.

[1] This Privacy Statement covers the following companies: Cotton States Mutual Insurance Company℠, Cotton States Life Insurance Company℠, Shield Insurance Company, CSI Brokerage Services, Inc., Cotton States Marketing Resources, Inc.◆, COUNTRY Mutual Insurance Company◆, COUNTRY Casualty Insurance Company◆, COUNTRY Preferred Insurance Company◆, COUNTRY Life Insurance Company◆, COUNTRY Investors Life Assurance Company◆, COUNTRY Capital Management Company◆, COUNTRY Trust Bank◆, COUNTRY® Mutual Funds Trust and CC Services, Inc.

11577a (01-12/06)

**Former Customers**

If you decide to terminate your customer relationship with our companies, we will continue to adhere to the privacy policies and practices described in this Privacy Statement as amended from time to time.

**Your Files**

We strive to keep our records of your information completely accurate. If you see any error in any of our communications to you, please call us at 1-888-211-2555, and we will promptly address any inaccuracy that may have occurred. If you see any error in any of our communications with you for any investment products, please call us at 1-800-442-8261.

# HOME INSURANCE
## POLICY DECLARATIONS

Cotton States Mutual Insurance Company
P.O. Box 105303, Atlanta, Georgia 30348-5303

| POLICY NUMBER | POLICY TERM | PAYMENT PLAN | INS. OFFICE / AGENT |
|---|---|---|---|
| G01K7001161 | 12 MONTHS | ANNUAL. | 01001 STHAL/ 17215 |

To report a claim any time day or night, call **1-800-457-1658.**

ACCOUNT NUMBER 8152710-001-00002

INSURED

**SAMPLE GREGORY
507 SANTALINA RD
DOTHAN AL 36303**

Policy period beginning Nov 02, 2006
12:01 a.m. standard time at your address.

Declarations reason   **NEW POLICY ISSUE**

Effective Nov 02, 2006 12:01 a.m. standard time at your address.

Your policy consists of the policy booklet, applications, declarations pages and any endorsements.   Please keep them together.

You have only the coverages and amounts of insurance as stated in this declarations, subject to all provisions of your policy.

| PREMIUM AMOUNT | $482.57 | TOTAL PREMIUM | $482.57 | B W |
|---|---|---|---|---|

| LOCATION OF PROPERTY COVERED | |
|---|---|
| LCTN | STREET ADDRESS/LOT & BLOCK/PHYSICAL DESCRIPTION/QTR, SECTION, TOWNSHIP, RANGE, COUNTY AND STATE |
| 001 | 507 SANTALINA RD DOTHAN AL |

**$1,000 DEDUCTIBLE PER LOCATION FOR EACH OCCURRENCE APPLICABLE TO SECTIONS 2, 3, 5 AND 6 CC-FF**

**DESCRIPTION OF PROPERTY COVERED**

| ITEM | LCTN | DESCRIPTION OF COVERAGE | SEC/COV (Refer to policy booklet) | PERIL | LOSS STLMT | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|---|---|---|---|
| 001-01 | | LIABILITY | 1 | A | | 100,000 | 36.00 |
| | | MEDICAL PAYMENTS | 1 | B | | | |
| | | EACH PERSON | | | | 1,000 | INCL |
| | | EACH OCCURRENCE | | | | 5,000 | INCL |
| 100-10 | 001 | DWELLING (A) HOMEOWNERS | 2 | C | 1 | 1 | 110,000 | 396.57 |
| 20 | 001 | PERSONAL PROPERTY | 2 | D | 2-19 | 3 | 82,500 | INCL |
| 30 | 001 | ADDITIONAL LIVING EXPENSE | 2 | E | 1 | | 22,000 | INCL |
| 40 | 001 | AUXILIARY PRIVATE STRUCTURES | 2 | F | 1 | 1 | 11,000 | INCL |
| | | INFLATION | 6 | CC | | | | INCL |
| | | PERSONAL PROPERTY REPLACEMENT COST | 6 | DD | | | | INCL |
| | | ENDORSEMENTS | | | | | |
| | | END. 047 SUMP PUMP/BACK-UP OF SEWER/DRAIN ($10,000 PERSONAL PROPERTY) | | | | 110,000 | 50.00 |
| | | DISCOUNTS | | | | | |
| | | ALARM CREDIT - 5% | | | | | INCL |
| | | SAFE HEAT | | | | | INCL |
| 999-80 | | PACKAGE OF SPECIAL COVERAGES | S | K | | | INCL |
| | | POLICY DISCOUNTS | | | | | |
| | | MULTI-POLICY DISCOUNT | | | | | INCL |
| | | POLICY ENDORSEMENTS | | | | | |
| | | ALABAMA AMENDATORY | | | | | |

21303C (00-09/06)

**HOME INSURANCE
POLICY DECLARATIONS**

Cotton States Mutual Insurance Company
P.O. Box 105303, Atlanta, Georgia 30348-5303

| POLICY NUMBER | POLICY TERM | PAYMENT PLAN | INS. OFFICE / AGENT |
|---|---|---|---|
| G01K7001161 | 12 MONTHS | ANNUAL | 01001 STHAL/ 17215 |

## ADDITIONAL INTEREST CONDITIONS

| NAME AND ADDRESS | NAME AND ADDRESS |
|---|---|

MORTGAGEE BILLED      FLAGSTAR BANK FSB
                      ITS SUCC AND/OR ASSIGNS ATIMA
                      PO BOX 7026
                      TROY MI 48007-7026

LOAN NUMBER           501257300
LIMITED TO

12/26/2006

DATE COUNTERSIGN

FOR SERVICE CALL YOUR AGENT ROB SALISBURY AT (334)794-4295.
FILE COPY

Page 2

21303C (00-09/06)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
20044AL (00-09/06)                    Page 1 of 2

## SUMP PUMP FAILURE/BACK-UP OF SEWER OR DRAIN

### THIS ENDORSEMENT INCLUDES LIMITATIONS AND RESTRICTIONS

For additional premium, "we" cover direct physical loss to covered property resulting from "sump pump failure". This coverage applies only to property covered in the following Coverages in effect at the time of loss:

**Dwelling, Coverage C**
**Personal Property, Coverage D**

### ADDITIONAL DEFINITION APPLICABLE TO THIS ENDORSEMENT

"Sump pump failure" means water or water-borne material, including sewage, which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment.

### ADDITIONAL EXCLUSIONS APPLICABLE TO THIS ENDORSEMENT

"We" will not pay for loss resulting directly or indirectly from any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. Flood, surface water (including water flowing naturally on or near the surface and water whose flow is artificially altered) waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; or

2. Water or water-borne material, regardless of its source, below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure. Direct loss by fire, explosion, or theft resulting from water damage is covered.

### ADDITIONAL CONDITIONS APPLICABLE TO THIS ENDORSEMENT

1. "We" will not pay more than the limit of liability stated for this endorsement in the Declarations.

2. For **Personal Property, Coverage D** "we" will pay no more than the limit of liability shown in the Declarations for SUMP PUMP FAILURE/BACKUP OF SEWER OR DRAIN or $10,000, whichever is less.

3. A $500 deductible will apply to each "occurrence" unless the policy deductible stated in the Declarations is higher, in which case the higher deductible will apply.

4. "We" will not pay for loss occurring within the first 10 days after inception of this endorsement. However, this limitation does not apply when this endorsement is part of the policy when issued as new business, or when added to replace another SUMP PUMP FAILURE/BACKUP OF SEWER OR DRAIN endorsement.

Nothing contained here varies, alters, or extends any provision of this policy except as provided in this endorsement.

20047 (03-07/03)



PO Box 105303
Atlanta, GA 30348-5303
*tel (866) 714-6902*
*www.cottonstatesinsurance.com*

**Privacy Statement**

*At Cotton States Insurance● and it's affiliates¹, your privacy has always been important to us. We believe keeping your information confidential is a fundamental part of doing business. We ensure that your privacy is fully protected under the law and we never sell your information to anyone.*
*Below is a summary of how we collect and use your information.*

---

**END. 044AL-00**

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ALABAMA AMENDATORY ENDORSEMENT

### THIS ENDORSEMENT INCLUDES LIMITATIONS AND RESTRICTIONS

**This endorsement changes the following sections of your policy:**

**SECTION 1**

**Exclusions - Section 1**

The following is added to the end of Item F.8.:

> However, this exclusion does not apply to punitive or exemplary damages awarded for wrongful death.

**Conditions - Section 1 (Includes Limitations)**

Item I. Concealment Or Fraud is deleted and replaced by the following:

  I. **Concealment Or Fraud.**

    "We" do not provide coverage where any "insured", whether before or after a loss, has:

      1. Intentionally concealed or misrepresented any material fact or circumstance;

      2. Engaged in fraudulent conduct; or

      3. Made false statements

    relating to this insurance.

**EXCLUSIONS - SECTIONS 2 through 6**

Item A.8. Intentional Loss is deleted and replaced by the following:

  8. **Intentional Loss**

    a. Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

      In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

    b. However, this exclusion will not apply to deny payment to an innocent co-"insured" who is a victim of domestic abuse as defined in the "Domestic Abuse Insurance Protection Act", when such coverage would otherwise be excluded under this provision if the damage or loss was proximately related to and in furtherance of abuse and the innocent co-"insured":

      (1) Either:

        (a) Files a complaint under the "Protection from Abuse Act", against the abuser for the act causing the loss, or

        (b) Seeks a warrant for the abuser's arrest for the act causing the loss; and

      (2) Completes a sworn affidavit for the insurer that indicates:

        (a) The cause of the loss;

        (b) A pledge to cooperate in any criminal prosecution of the person committing the act causing the loss; and

        (c) A pledge not to voluntarily dismiss any complaint the innocent co-"insured" has filed under the "Protection from Abuse Act."

**Former Customers**

If you decide to terminate your customer relationship with our companies, we will continue to adhere to the privacy policies and practices described in this Privacy Statement as amended from time to time.

**Your Files**

We strive to keep our records of your information completely accurate. If you see any error in any of our communications to you, please call us at 1-888-211-2555, and we will promptly address any inaccuracy that may have occurred. If you see any error in any of our communications with you for any investment products, please call us at 1-800-442-8261.

**HOME INSURANCE**
**POLICY DECLARATIONS**

Cotton States Mutual Insurance Company®
P.O. Box 105303, Atlanta, Georgia 30348-5303

| POLICY NUMBER | POLICY TERM | PAYMENT PLAN | INS. OFFICE / AGENT |
|---|---|---|---|
| G01K7001161 | 12 MONTHS | ANNUAL | 01001 STHAL/ 17215 |

To report a claim any time day or night, call **1-800-457-1658.**

ACCOUNT NUMBER 8152710-001-00002

INSURED

**SAMPLE GREGORY**
**507 SANTALINA RD**
**DOTHAN AL 36303**

Policy period beginning **Nov 02, 2006**
12:01 a.m. standard time at **your** address.

Declarations reason   **NEW POLICY ISSUE**

Effective  Nov 02, 2006  12:01 a.m. standard time at **your**
address.

**Your** policy consists of the policy booklet, applications,
declarations pages and any endorsements.  Please keep them
together.

**You** have only the coverages and amounts of insurance as stated in this declarations, subject to all provisions of **your** policy.

| PREMIUM AMOUNT | $482.57 | TOTAL PREMIUM | $482.57 | B W |
|---|---|---|---|---|

| LOCATION OF PROPERTY COVERED |
|---|

| LCTN | STREET ADDRESS/LOT & BLOCK/PHYSICAL DESCRIPTION/QTR, SECTION, TOWNSHIP, RANGE, COUNTY AND STATE |
|---|---|
| 001 | 507 SANTALINA RD DOTHAN AL |

| $1,000 DEDUCTIBLE PER LOCATION FOR EACH OCCURRENCE APPLICABLE TO SECTIONS 2, 3, 5 AND 6 CC-FF |
|---|

| DESCRIPTION OF PROPERTY COVERED |
|---|

| ITEM | LCTN | DESCRIPTION OF COVERAGE | SEC/COV | PERIL (Refer to policy booklet) | LOSS STLMT | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|---|---|---|---|
| 001-01 | | LIABILITY | 1 | A | | 100,000 | 36.00 |
| | | MEDICAL PAYMENTS | 1 | B | | | |
| | | EACH PERSON | | | | 1,000 | INCL |
| | | EACH OCCURRENCE | | | | 5,000 | INCL |
| 100-10 | 001 | DWELLING (A) HOMEOWNERS | 2 | C | 1 | 1 | 110,000 | 396.57 |
| 20 | 001 | PERSONAL PROPERTY | 2 | D | 2-19 | 3 | 82,500 | INCL |
| 30 | 001 | ADDITIONAL LIVING EXPENSE | 2 | E | 1 | | 22,000 | INCL |
| 40 | 001 | AUXILIARY PRIVATE STRUCTURES | 2 | F | 1 | 1 | 11,000 | INCL |
| | | INFLATION | 6 | CC | | | | INCL |
| | | PERSONAL PROPERTY REPLACEMENT COST | 6 | DD | | | | INCL |
| | | ENDORSEMENTS | | | | | | |
| | | END. 047 SUMP PUMP/BACK-UP OF SEWER/DRAIN | | | | 110,000 | 50.00 |
| | | ($10,000 PERSONAL PROPERTY) | | | | | |
| | | DISCOUNTS | | | | | |
| | | ALARM CREDIT - 5% | | | | | INCL |
| | | SAFE HEAT | | | | | INCL |
| 999-80 | | PACKAGE OF SPECIAL COVERAGES | 5 | K | | | INCL |
| | | POLICY DISCOUNTS | | | | | |
| | | MULTI-POLICY DISCOUNT | | | | | INCL |
| | | POLICY ENDORSEMENTS | | | | | |
| | | ALABAMA  AMENDATORY | | | | | |



EXHIBIT

B

FOR SERVICE CALL YOUR AGENT ROB SALISBURY AT (334)794-4295.
FILE COPY

**HOME INSURANCE
POLICY DECLARATIONS**

Cotton States Mutual Insurance Company®
P.O. Box 105303, Atlanta, Georgia 30348-5303

| POLICY NUMBER<br>G01K7001161 | POLICY TERM<br>12 MONTHS | PAYMENT PLAN<br>ANNUAL | INS. OFFICE / AGENT<br>01001 STHAL/ 17215 |
|---|---|---|---|

| ADDITIONAL INTEREST CONDITIONS | |
|---|---|
| NAME AND ADDRESS | NAME AND ADDRESS |

MORTGAGEE BILLED      FLAGSTAR BANK FSB
                                   ITS SUCC AND/OR ASSIGNS ATIMA
                                   PO BOX 7026
                                   TROY  MI  48007-7026

LOAN NUMBER              501257300
LIMITED TO

12/26/2006

DATE COUNTERSIGN

21303C (00-09/06)



FILED

MAY 0 7 2007

*Lula Woodall*
Lula Woodall, Clerk
Houston County, AL

## IN THE CIRCUIT COURT FOR
## HOUSTON COUNTY, ALABAMA

NEW WORLD CLOSING SERVICES, INC.;    )
and MARTIN MCCALL,    )
    )
    Plaintiffs,    )
    )
v.    )    Case No.: CV-07-272 X
    )
GREGORY S. SAMPLE, individually and    )    JURY TRIAL DEMANDED
as agent for REGATTA CLOSING AND    )
TITLE CORPORATION, INC.; and    )
FICTITIOUS DEFENDANTS "A", "B"    )
and "C", being those persons, corporations,    )
partnerships, and/or other legal entities whose    )
identities are otherwise unknown to the    )
Plaintiffs but will be supplemented by    )
amendment hereto once ascertained,    )
    )
    Defendants.    )
    )

## COMPLAINT

    COME NOW the Plaintiffs in the above-styled action, by and through counsel, and hereby submit the following Complaint at Law, to be answered in accordance with, and pursuant to the time constraints of, the Alabama Rules of Civil Procedure.

### STATEMENT OF THE PARTIES

1.    Plaintiff, New World Closing Services, Inc. (hereinafter "New World"), is an Alabama corporation doing business by agent in Houston County, Alabama at all times materially relevant hereto.

2.    Plaintiff, Martin McCall (hereinafter "McCall"), is over the age of nineteen (19) years and is a resident citizen of Houston County, Alabama.

**EXHIBIT**

C

3.     Defendant, Gregory S. Sample (hereinafter "Sample"), is over the age of nineteen (19) years and, through information and belief, is a resident citizen of Houston County, Alabama.

4.     Defendant, Regatta Closing and Title Corporation, Inc. (hereinafter "Regatta"), is an Alabama corporation doing business by agent in Houston County, Alabama at all times materially relevant hereto.

5.     Fictitious Defendants "A", "B" and "C" are those persons, corporations, partnerships and/or other legal entities whose identities are otherwise unknown to the Plaintiffs but will be supplemented by amendment hereto once ascertained.

## STATEMENT OF THE FACTS

6.     New World, owned primarily by McCall and his wife, is in the business of closing mortgage loans for various bank, mortgagors, and other lending institutions.

7.     Sample was employed by New World, and his responsibilities involved performing title searches, preparing closing documents, and other duties generally related to the loan closing process.

8.     New World customarily employed the services of an outside attorney for the purpose of reviewing, approving and/or otherwise "signing off" on the closing packages prepared by New World.

9.     New World assisted Sample, who holds a law degree, in his preparation for the Bar examination by purchasing books for him and allowing him time off in order to study.

10.    It was intended by and amongst the parties that Sample, after passing the bar examination, would then perform all of the loan closing duties which had previously been outsourced to other attorneys.

11.    After passing the Bar examination, Sample continued his employment with New World, performing all of the necessary legal work as referenced in paragraph 10, above.

12.    In the summer of 2006, discussions took place by and amongst the parties with regard to the purchase by Sample of seventy-five percent (75%) of New World's stock, and on August 2, 2006, the parties entered into a written contract whereby Sample agreed to purchase said stock for $450,000.

13.    It was further agreed by and amongst the parties, specified within a separate agreement, that $250,000 of said purchase price would be in the form of a cash down payment, with the remaining balance ($200,000) to be paid in installments.

14.    On Monday, November 13, 2006, Sample finally secured financing for his purchase of the New World stock, receiving a check from The Peoples Bank of Coffee County in the amount of $250,000.

15.    Sample informed McCall that he finally had the funds necessary to consummate the transaction, and the parties agreed to execute all necessary paperwork one week later on Monday, November 20, 2006.

16.    In the meantime, Sample began making preparations not to purchase New World, but rather to leave it destitute. He spoke privately with other employees, telling them he was leaving to start his own company, offering them employment positions therewith, and making false and defamatory statements about McCall and New World.

17.    That weekend (November 18 and 19), Sample secretly entered the New World building and removed all of his belongings from his office. He then rummaged through McCall's desk in an attempt to remove all documents relating to the contract to purchase the New World stock, taking with him the aforementioned agreement relating to the division of the purchase price (referenced in paragraph 13, herein above), as well as various sensitive financial documents belonging and pertaining to McCall and/or New World. However, Sample apparently missing the original, underlying purchase agreement (referenced in paragraph 12, herein above).

18.    On the morning of November 20, 2006, Sample entered McCall's office and, instead of executing the aforementioned purchase documents, informed McCall that he was resigning from his employment with New World effective immediately, and that he would be leaving Dothan to take a position with a law firm in Birmingham.

19.    On or about November 29, 2006, Sample opened Regatta, employing some of New World's former employees.

20.    Sample then set about on a concentrated effort to destroy the business reputation of New World, as well as that of McCall, by telling various realtors, bankers and other lenders (all business contacts of McCall and New World) that McCall had been illegally taking money from the New World escrow account, despite Sample's full knowledge that his statements were untrue.

## COUNT ONE
## BREACH OF CONTRACT

21.    Plaintiffs re-allege all prior paragraphs as if set out here in full.

22.    Plaintiffs entered into a valid and binding contract with Defendant, Sample.

4

23.    Defendant, Sample, breached said contract by failing and/or refusing to honor his obligations thereunder and purchase the aforementioned shares of New World stock, despite Plaintiffs' readiness and willingness to sell and convey ownership of same.

24.    As a direct and proximate result of Defendant's breach, Plaintiffs have been damages as described herein below.

## COUNT TWO
## SPECIFIC PERFORMANCE

25.    Plaintiffs re-allege all prior paragraphs as if set out here in full.

26.    Plaintiffs pray that this Honorable Court will Order the Defendant, Sample, to specifically perform his contractual obligations and purchase the aforementioned seventy-five percent (75%) ownership of New World stock in accordance with, and pursuant to the negotiated purchase price of, the legally binding contract executed between the parties.

## COUNT THREE
## DEFAMATION

27.    Plaintiffs re-allege all prior paragraphs as if set out here in full.

28.    Between November 2006 and the present, Defendant Sample, acting both individually and as agent for Regatta, has repeatedly made false and malicious statements to third persons, which statements have subjected the Plaintiffs to disgrace, ridicule, odium, and/or contempt in the estimation of its friends, acquaintances, business contacts, and/or the public, with resulting damage to Plaintiffs' reputations.

29.    As a direct and proximate result of Defendants' defamatory statements, Plaintiffs have been cause to suffer damages as described herein below.

5

## COUNT FOUR
## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

30.     Plaintiffs re-allege all prior paragraphs as if set out here in full.

31.     Defendant Sample, acting both individually and as agent for Regatta, intentionally interfered with the business relations of McCall and New World by secretly soliciting New World's employees while he (Sample) was still an employee therewith, and by making, publishing and/or otherwise disseminating false and malicious statements to New World's business contacts in an effort to solicit business away from New World.

32.     As a direct and proximate result of Defendants' conduct as described herein above, Plaintiffs have been caused to suffer damages as described herein below.

## COUNT FIVE
## CONVERSION

33.     Plaintiffs re-allege all prior paragraphs as if set out here in full.

34.     Defendant, Sample, did knowingly and unlawfully take and convert to his own use and possession certain documents belonging to McCall and/or New World, and more fully described in paragraph 17, above.

35.     As a direct and proximate result of Defendant's conduct as described herein above, Plaintiffs have been caused to suffer damages as described herein below.

## COUNT SIX
## INVASION OF PRIVACY

36.     Plaintiffs re-allege all prior paragraphs as if set out here in full.

37.     Defendant Sample, acting both individually and as agent for Regatta, published, disseminated and/or otherwise made known to unauthorized persons the contents of the financial documents unlawfully taken from the Plaintiffs, described more fully in paragraph 17, above.

38.    Defendants' conduct amounted to an invasion of Plaintiffs' privacy and, as a direct and proximate result thereof, Plaintiffs have been cause to suffer damages as described herein below.

## DAMAGES

39.    Plaintiffs re-allege all prior paragraphs as if set out here in full.

40.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been caused to suffer damages as follows:

      a.    Loss of proceeds from the aforementioned sale of New World stock;

      b.    Loss of business opportunities;

      c.    Loss of revenue and profits;

      d.    Loss of reputation;

      e.    Loss of personal property;

      f.    Loss of interest money;

      g.    Loss of attorneys' fees and court costs;

      h.    Mental anguish and emotional distress.

## PRAYER FOR RELIEF

41.    Plaintiffs re-allege all prior paragraphs as if set out here in full.

42.    Plaintiffs demand judgment against the Defendant, Sample, in the form of an Order for specific performance of Sample's obligations under the aforementioned contract, as described in paragraphs 12 and 13, above.

43.    Plaintiffs demand judgment against the Defendants for both compensatory and punitive damages in an amount to be determined by a jury, as well as any and all other equitable relief this Court deems fit, plus attorneys' fees and costs of court.

RESPECTFULLY SUBMITTED this the __7__ day of May, 2007.

### JURY TRIAL DEMANDED ON ALL COUNTS SO TRIABLE.

MORRIS, CARY, ANDREWS,
TALMADGE, JONES & DRIGGERS, LLC


M. ADAM JONES (JON-126)
Attorney for Plaintiffs

Of Counsel:
P.O. Box 1649
3334 Ross Clark Circle
Dothan, AL 36302
Tel: 334-702-0000
Fax: 334-673-0077
ajones@MorrisCaryAndrews.com

8

Serve Defendants at:

Gregory S. Sample
288 W. Main Street
Suite 2
Dothan, AL 36301

Regatta Closing and Title Corporation, Inc.
288 W. Main Street
Suite 2
Dothan, AL 36301

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602000475
Cashier ID: brobinso
Transaction Date: 09/17/2007
Payer Name: ADAMS REESE LLP
------------------------------------
CIVIL FILING FEE
 For: ADAMS REESE LLP
 Case/Party: D-ALM-1-07-CV-000842-001
 Amount:        $350.00
------------------------------------
CHECK
 Check/Money Order Num: 025255
 Amt Tendered: $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

COTTON STATES V. SAMPLE
```